Gladys **BRINEGAR** and Harold F. Hodges, Appellants,

v.

**ROBERTSON CORPORATION, Appellee.**

No. 47A04–8811–CV–388.

Court of Appeals of Indiana, Fourth District.

Feb. 28, 1990.

Edward F. McCrea, McCrea & McCrea, Bloomington, for appellants.

James L. Whitlatch, Bunder, Robertson, Kelley & Steger, Bloomington, for appellee.

MILLER, Judge.

Plaintiffs-appellants Gladys Brinegar and Harold Hodges appeal the trial court's judgment in favor of defendant-appellee Robertson Corporation (Robertson) in an action based on negligence for property damages which occurred when a fire originated on Robertson's property and spread to adjacent property owned by Brinegar and Hodges. Brinegar and Hodges, claiming damages of $45,652.66 and $9,000.00 respectively, sued Robertson for negligence. At the trial, the court rejected Brinegar and Hodges' theory of *res ipsa loquitur* and the case proceeded on a theory of negligence. The jury found against Brinegar and Hodges. Brinegar and Hodges appeal claiming the following issues::

1. Whether the trial court erred in failing to give an instruction on the doctrine *res ipsa loquitur* and the granting of a motion for judgment on the evidence on this issue where the cause of the fire was undetermined;

2. Whether it was error for the trial court to permit two witnesses to testify that defendant's conduct was reasonable; that fires can start without fault; and that no other lawsuits were filed against Robertson, implying defendant could not have been negligent;

3. Whether it was error for the trial court to fail to give further instructions to the jury upon the receipt of a note from the jury after deliberations had begun.

We affirm.

## FACTS

In August, 1986 a fire occurred in Bedford, Indiana originating in a mill owned and operated by Robertson. The fire began a few hours after the mill closed and spread to real estate owned by Brinegar and Hodges.

The mill was a large building primarily constructed of wood that had a portion of its structure built during the year 1881. The mill processed wheat into a biscuit flour-like substance that was sold as an adhesive extender, similar in purpose to glue, used in the manufacturing of plywood and veneers. The manufacturing process included the use of six large rollers, which needed lubrication because of friction involved, to grind the wheat. A dust control system was installed to prevent dust explosion.

The building was regularly inspected by the fire department and always passed inspection. There was no evidence the fire was caused by a dust explosion. Although Robertson did not have a central alarm system, sprinkling system, or a night watchman on its premises, Robertson took all precautions required of it or suggested to it by the local fire department. The building was regularly inspected and complied with all relevant codes. No sprinkling systems or alarms were required and there was testimony indicating that they probably would not have prevented the fire.

The origin of the fire could not be determined by any expert. Machines used in the mill were checked after the machines were turned off for the day. The motors were inspected after the fire and it was not determined that they had anything to do with the cause of the fire. There was testimony from experienced firefighting officials indicating that a fire can start without fault. There was also testimony that an individual had admitted starting the fire at the Robertson mill. Arson was not ruled out as a cause.

Additional facts will be given when necessary to the decision.

### ISSUE ONE

*Removal of the doctrine of res ipsa loquitur from jury consideration.*

Brinegar and Hodges argue that the trial court erred by preventing the jury from considering whether the doctrine of *res ipsa loquitur* should apply to this case. At the conclusion of plaintiffs' evidence, Robertson made a motion for judgment on the evidence requesting that the doctrine be withdrawn from the jury. After hearing argument of counsel, the trial judge removed the doctrine from the case because arson had not been ruled out. The judge reasoned that it was not "fair to charge someone with a duty to prevent arson."

 Because the refusal of the instruction and judgment on the evidence are related, we will discuss these issues together. The doctrine of *res ipsa loquitur* is a rule of evidence whereby an inference of negligence can be drawn under certain factual circumstances. *SCM Corp. v. Letterer* (1983), Ind.App., 448 N.E.2d 686, 689. There are three prerequisites to the application of the doctrine. As stated in *SCM Corporation,* they are: (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to any voluntary action or contribution on the part of the plaintiff. *See also* W. Prosser, *Law of Torts,* § 39, page 214 (4th ed. 1971); I.L. Friemer and M. Friedman, *Products Liability* § 12.03.

 Robertson contends that the only prerequisite met in the present case is that the event was not due any voluntary action or contribution on the part of the plaintiffs, and, since the other prerequisites were not met, the granting of the directed verdict and the refusal of plaintiff's final instruction number one was proper. We agree.

A review of the Indiana cases which have considered the *res ipsa loquitur* question reveals that there are no cases which address the issue of whether the doctrine can be considered by the jury when the cause of the fire has not been established.[1] How-

---

1. Brinegar and Hodges cite cases in support of giving the instruction; however the cases cited all involved actions for damages where the cause of the fire was known. They rely on *Smith v. Insurance Company of North America* (1980), Ind.App., 411 N.E.2d 638, where a trash

ever, a review of the cases from other jurisdictions reveal persuasive arguments that the doctrine should not apply under these circumstances.

For instance, in *Menth v. Breeze Corporation* (1950), 4 N.J. 428, 73 A.2d 183, 18 A.L.R.2d 1071, the plaintiffs suffered damage when their household furnishings and personal effects (located in their apartment) were destroyed by a fire which started in an adjoining shed on an unimproved lot which was leased and used by the defendant. In the shed were stored burlap bags, with an oily discolored appearance, which were used to transport waste aluminum shavings from the defendant's factory to the shed. The bags were emptied into another shed; however, they may have contained aluminum shavings which adhered to the insides of the bag. The court discussed the rule of *res ipsa loquitur* as applied to cases involving fires in the following language which we find persuasive:

> The rule of *res ipsa loquitur* is infrequently applied to cases involving fires, and to a lesser extent to explosion cases. *Kapros v. Pierce Oil Corp.*, 324 Mo. 992, 25 S.W.2d 777, 78 A.L.R. 722 (Mo.Sup.Ct. 1930); *Highland Golf Club of Iowa Falls, Iowa v. Sinclair Refining Co.*, 59 F.Supp. 911, 919 (Iowa Dist.Ct.1945); *Keyser Canning Co. v. Klots Throwing Co.*, 94 W.Va. 346, 118 S.E. 521, 31 A.L.R. 283, 292 (W.Va.Sup.Ct.1923); *Noonan v. Great Atlantic & Pacific Tea Co.*, 104 N.J.L. 136, 138, 139 A. 9, 56 A.L.R. 590 (E. & A.1927); 22 Am.Jur. (Explosions and Explosives) § 95, p 212. The reasons are not difficult to perceive.

The cause of a fire is generally unknown, fires commonly occur where due care has been exercised as well as where due care was wanting. Where a fire originates on a defendant's premises, that alone is not evidence that it was started by the defendant, nor that the fire was caused by any negligence on its part. *Little v. Lynn & Marblehead Real Estate Co.*, 301 Mass. 156, 16 N.E.2d 688 (Mass.Sup.Jud.Ct. 1938); *Brownhill v. Kivlin*, 317 Mass. 168, 57 N.E.2d 539, 540 (Mass.Sup.Jud. Ct.1944); 22 Am Jur (Fires) §§ 75 and 76, pp. 642–643.

Whether a fire case falls within the operation and scope of the *res ipsa loquitur* rule must of necessity depend upon the particular facts and circumstances appearing in the individual case. The surrounding circumstances under which a fire is communicated to the premises of a neighbor may in exceptional or unusual cases justify the application of the rule. The general rule, however, is that the destruction of property by fire, either on premises where it starts, or upon other property to which it is communicated, does not of itself raise a presumption of negligence in either the kindling or management of the fire unless there are special circumstances present that lead to a reasonable conclusion that due care was wanting. 22 Am Jur (Fires) 78, p 644.

It is also essential to the application of the *res ipsa loquitur* doctrine that those seeking to obtain the benefit of its presumptive effect must show that in all probability the direct cause of the injury and so much of the surrounding circum-

---

fire was left unattended by defendant's employee on defendant's property. They also cite *Shull v. B.F. Goodrich Company* (1985), Ind.App., 477 N.E.2d 924. *Shull* involved an action for damages for injuries suffered when a dock-plate (a mechanical device) malfunctioned, throwing plaintiff to the floor of his trailer. They also cite a California case, *Levy–Zentner Co. v. Southern Pac. Transportation Co.* (1977), 74 Cal. App.3d 762, 142 Cal.Rptr. 1, where the fire was found to be caused by a third party. Because similar fires had occurred previously, the court held the fire was forseeable, and held the defendant warehouse owner responsible. In the present case, Robertson had no reason to foresee arson.

Robertson cites *McKinney Supply Company v. Orovitz* (1957), Fla., 96 So.2d 209, where a fire spread from the defendant's liquified petroleum plant to adjoining property. The court held plaintiffs were not entitled to rely on the doctrine because an essential element thereof—the cause of the damage was not one which does not occur in the absence of negligence—had not been proved. He also cites *Tedrow v. Des Moines Housing Corp.* (1958), 249 Iowa 766, 87 N.W.2d 463, 467, where the court found the cause of the fire was mere conjecture. The court held evidence need not be conclusive, but must rise above speculation.

stances essential to its occurrence were in the exclusive control of the defendant, or his agents or servants. *Hamrah v. Clements*, 3 N.J. 285, 69 A.2d 720 (1949); Cf. *Oelschlaeger v. Hahne & Co.*, 2 N.J. 490, 66 A.2d 861 (1949); *Woschenko v. C. Schmidt & Sons*, 2 N.J. 269, 274, 66 A.2d 159 (1949); *Grugan v. Shore Hotels Finance, etc., Corp.*, 126 N.J.L. 257, 262, 18 A.2d 29; 38 Am.Jur. (Negligence) § 300, p. 996. In case of fire the rule requires that the actual cause of it must have been under the exclusive control of the party charged with negligence. Under the testimony before us the fire may have resulted from one or more of several causes, including the acts of third parties or strangers over whom defendant had no control. *Hamrah v. Clements, supra.* Mere possession of the premises and shed from which the fire spread is not a basis for the application of the *res ipsa loquitur* rule. Additionally the instrumentality or thing causing the fire must be shown to warrant the application of the rule. *Hamrah v. Clements, supra;* cf. *Oelschlaeger v. Hahne & Co., supra;* The President Wilson, 5 F.Supp. 684, 686 (Cal.Dist.Ct.1933); *Highland Golf Club of Iowa Falls, Iowa v. Sinclair Refining Co., supra.*

73 A.2d 183, 186–187.

In *Hahn v. Eastern Illinois Office Equipment Company* (1976), 42 Ill.App.3d 29, 355 N.E.2d 336 the rule was discussed as follows:

> The mere occurrence of a fire is not sufficient to invoke the doctrine of *res ipsa loquitur.*
>
> (*Edmonds v. Heil* (1948), 333 Ill.App. 497, 77 N.E.2d 863.) It is only when the fact of the fire plus the surrounding circumstances give rise to an inference of negligence that *res ipsa loquitur* is applicable. "*Res Ipsa Loquitur*—Fires," 8 A.L.R.3d 974, 984, 992. The doctrine does not relieve the plaintiff of proving that negligence was the cause of the injury (*Mabee v. Sutliff and Case Co., Inc.* (1948), 335 Ill.App. 353, 366, 82 N.E.2d 63, 69–70), although it makes proof of negligence easier.

Plaintiff cites several cases involving fires where *res ipsa loquitur* was held to be applicable. (*Collgood, Inc. v. Sands Drug Co.* (1972), 5 Ill.App.3d 910, 284 N.E.2d 406; *Arado v. Epstein* (1944), 323 Ill.App. 194, 55 N.E.2d 561; *Edmonds v. Heil; Oakdale Building Corp. v. Smithereen Co.* (1944), 322 Ill.App. 222, 54 N.E.2d 231.) *In each of these cases circumstances beyond the mere occurrence of the fire existed which justified the establishment of a prima facie case of negligence.* In *Collgood*, defendant's employees were in the area of defendant's exclusive control to install fixtures. Shortly after their arrival, the fire department responded to an alarm there and found a space heater with red hot filiments one foot away from a burning box. In *Arado*, defendants and his workmen were the only ones in the basement when the fire started. Under those circumstances the facts of the occurrence were peculiarly within the knowledge of the defendant. In *Edmonds* the fire occurred shortly after the janitor had fired the boiler. According to the testimony the janitor was mistakenly operating the system on "pounds" of pressure rather than "ounces". In *Oakdale*, a fire started within 15 minutes after one of defendant's employees had left the empty apartment.

In the case at bar, the witnesses who testified pinpointed the fire as originating in defendant's furnace. No other circumstances which could raise an inference of negligence were established. Accordingly the trial court was correct in holding that the doctrine of *res ipsa loquitur* was not applicable. See *Welch v. New Harper Hotel Co.* (1915), 196 Ill. App. 94. Plaintiff presented no evidence from which a jury could say that it is more likely than not that negligence was the cause of the fire. When no such balance of probabilities in favor of negligence can reasonably be found, *res ipsa loquitur* does not apply. Prosser, *Torts*, 218 (4th Ed.1971). (Emphasis added)

355 N.E.2d at 339.

*See* 18 A.L.R.2d 1081 (1951) Annot. *Fire—Liability for Spread;* 8 A.L.R.3d 974

(1966) Annot. *Res Ipsa Loquitur—Fires;* 21 A.L.R. 4th, 929 (1983), Annot. *Res Ipsa Loquitur—Cause of Liability for Real Property Fires.*

The law is settled in Indiana that the defendant must have exclusive control of the offending instrumentality in order for the doctrine to apply. *Shull v. B.F. Goodrich Co.* (1985), Ind.App., 477 N.E.2d 924; *SCM Corp. v. Letterer* (1983), Ind.App., 448 N.E.2d 686. Here, the cause (the "thing" or "instrumentality" which caused the fire) was unknown. Thus, the trial court properly excluded the doctrine of *res ipsa loquitur* from consideration by the jury.

### ISSUE TWO

*Improper admission of witness testimony.*

Brinegar and Hodges also cite as error the inclusion of testimony by several witnesses. They first complain that the trial court erred in allowing two witnesses to testify to the reasonableness of Robertson's conduct. They claim ordinary care, reasonableness, lack of negligence are all terms that a jury must determine. They cite *Indianapolis St. R. Company v. Seerley* (1904), 35 Ind.App. 467, 72 N.E. 169, *rehearing denied* 35 Ind.App. 467, 72 N.E. 1034, for the general rule that witnesses are not allowed to give their opinions as to what is ordinary care.

They assert the first error occurred when the trial court allowed, over their objection, Bedford Fire Chief Don E. Tyree to answer questions by defense counsel as follows:

Q: You didn't ask him [Robertson] to be perfect, did you?

A: No, sir.

Q. In fact, he was very reasonable was he not? [Objection overruled]

Q. [to Court] ... I asked if in his opinion he was reasonable in the maintenance of the property your Honor [the Court: I think being the Chief of the fire department with 36 years of experience he has the qualifications to give an opinion so I will overrule the objection] ... I think he has already answered the question and the answer was yes.

A: Yes.

Indiana courts have established two rules governing admissibility of opinion testimony on the ultimate fact at issue. The rules are as follows: (1) the admissibility of lay opinion on the ultimate fact and issue rests within the discretion of the trial court; and (2) expert opinion evidence is admissible, even as to the ultimate fact in issue, where a subject does not come within the range of common knowledge or experience. *Breese v. State* (1983), Ind.App., 449 N.E.2d 1098; *Gerrick v. State* (1983), Ind.App., 451 N.E.2d 327.

■ Tyree, as fire chief of Bedford and associated with the Bedford Fire Department for thirty-six (36) years, is clearly qualified as an expert witness. He would also qualify as an expert witness based on his personal knowledge of the Robertson property. If a witness exhibits a degree of knowledge to make it appear his opinion is of some value, the witness may testify as an expert. *Pollard v. State* (1982), Ind.App., 439 N.E.2d 177. A court's decision regarding expert testimony is granted broad discretion and will only be reviewed for an abuse of that discretion. *Lawhorn v. State* (1983), Ind., 452 N.E.2d 915.

■ Brinegar and Hodges also complain that a second and more grievous error was committed when ex-fireman Charlie Robbins was allowed to say Robertson was reasonable and to give exculpatory possible explanations for the cause of the fire:

Q: ... can fires start in the absence of any fault or anybody acting unreasonably? (Objection overruled)

Q: I think he may have answered it, can fires start in the absence of any fault or anybody acting unreasonably.

A: Yes.

Q: In fact, do most fires start in that manner.

MR. MC CREA: Same objection Your Honor.

THE COURT: The objection is overruled.

A: Well, yes, a lot of fires do start with no fault because you have the speed of his feed belts for instance, you have numerous belts, motors throughout the building. . . .

Robertson points out that Robbins also qualifies as an expert under Indiana law as Robbins had been with the Bedford Fire Department for twenty-six and a half years. He had been Assistant Chief for the department for many years. He had also been a training officer with the fire department and had been to numerous fire training schools. Robbins had also inspected the Robertson mill several times.

Robbins was asked the following questions immediately preceding the above questioning and gave the following answers without objection:

Q. Based upon your experience with the Fire Department and your training, are there a variety of causes of fires?

A. Well, yes there can be all types of situations that causes fires.

Q. There are a lot of causes.

A. You, got electrical situations, you got lightning, you got, you know, of course there is always (indiscernable) as far as that goes, well, there are just numerous instances.

The question as to whether or not fires can start without anyone being negligent or at fault was clearly within the witness's knowledge and admissible. That fact, under the circumstances of this case, where the cause of the fire is unknown, was not an invasion of the jury's prerogative to determine negligence. It was merely an expert's recognition of the same fact or circumstances of which our courts have regularly taken notice, that is, "the cause of a fire is generally unknown, fires commonly occur where due care has been exercised as well as when due care was wanting." *Menth v. Breeze, supra.*

■ Finally, Brinegar and Hodges contend that, over objection, Joe Robertson, was allowed to tell the jury that Robertson had not been involved in any other lawsuits as a result of the fire. They claim that allowing the introduction of this irrelevant evidence was prejudicial to the plaintiff— suggesting the evidence implied Robertson could not have been negligent because no one else filed a lawsuit and implying Brinegar and Hodges filed a meritless suit.

At trial, Brinegar and Hodges' only objection was relevancy. We agree with Robertson that since the only basis for the objection is relevancy, nothing is properly preserved for appeal. *Dean v. State* (1982), Ind., 433 N.E.2d 1172. The determination of relevancy rests within the discretion of the trial court and a decision will only be reversed for a clear abuse of that discretion. *Morris v. State* (1982), Ind. App., 433 N.E.2d 74. No such clear abuse is present here.

We find no error in admitting all of the foregoing testimony.

### ISSUE THREE

*Failure to respond to jury question after deliberation had begun.*

■ Finally Brinegar and Hodges contend that, after the jurors had retired for deliberations, they delivered a handwritten note to the trial court which stated: "The scales are balanced if it tips the least amount because of evidence?" Brinegar states that the trial court responded: "I can't answer the question. Do you want food?"

Brinegar and Hodges assert the jurors should have been told in response to this message that if the scales of justice are tipped in a party's favor, then that party has met his burden. Robertson does not dispute that the jury presented its question to the court.[2] However, even if the jury question was as Brinegar and Hodges presented, we are not persuaded that the

---

**2.** Although the parties agree that the jury did present this question to the court, there is nothing in the record, pursuant to Appellate Rule 7.2, to indicate that such a question was indeed presented to the court, how the plaintiffs found out about this question, or what the judge's response was to such question.

trial court abused its discretion in not responding to the jury's handwritten note.

■ Failure to answer a jury's question regarding the law during deliberations is not error per se, and the trial court must exercise discretion in determining whether certain questions of the jury should be answered. *Bituminous Fire and Marine Insurance Company v. Culligan Fyrprotexion, Inc.* (1982), 437 N.E.2d 1360, 1364; *Smith v. State* (1979), 270 Ind. 579, 388 N.E.2d 484; and *Crowdus v. State* (1982), 431 N.E.2d 796. Our supreme court has disapproved of giving of any single instruction after the jury has commenced deliberation except in limited circumstances. *Jenkins v. State* (1981), Ind., 424 N.E.2d 1002, 1003. Here, the court was under no duty to answer the jury's question nor under any duty to again read all of the instructions. Brinegar and Hodges do not contend the original instruction was ambiguous. Thus, we find no error.

RATLIFF, C.J., concurring with separate opinion.

CONOVER, J., dissenting with opinion.

RATLIFF, Chief Judge, concurring.

I concur completely with Judge Miller's opinion on the Issues One and Three. I concur in result as to Issue Two for the reasons hereinafter stated.

In discussing the admissibility of expert testimony, Judge Miller appears to follow the archaic rule that for expert testimony to be admitted, the subject must be beyond the range of common knowledge and experience. I cannot accept this view of the law.

In *Summers v. State* (1986), Ind.App., 495 N.E.2d 799, we laid the holding of the older cases to rest in favor of the modern view that expert testimony is admissible if the witness is qualified by knowledge, skill, experience, training, or education to give such testimony and that testimony would aid the jurors in understanding the facts. In *Summers* we said:

"The trend of recent cases seems to focus more attention on the knowledge and skill of the expert and whether the expert's opinion will be helpful to the trier of fact than on the question of the knowledge of the jury. *See* E.W. Cleary, *McCormick on Evidence*, at 33 (3d ed. 1984).

. . . . .

The modern trend is away from strict application of the rule excluding expert testimony on subjects within the common knowledge of jurors. *Carlson v. Hudson* (1974), 19 Ill.App.3d 576, 312 N.E.2d 19; *Stanley v. Board of Education* (1973), 9 Ill.App.3d 963, 293 N.E.2d 417.

'Traditionally, expert testimony has not been permitted when its subject matter is not beyond the knowledge and experience of the average juror [citation omitted], but more recently, the trend is to permit it if the expert has some special knowledge and his testimony is of aid to the jury even though the average juror would also have some knowledge of the subject matter. [Citations omitted.]'

*Binge v. J.J. Borders Construction Co.* (1981), 95 Ill.App.3d 238, 50 Ill.Dec. 788, 791, 419 N.E.2d 1237, 1240. The modern standard for admissibility of expert testimony is whether that testimony will aid the jurors in understanding the facts. *Johnson v. Commonwealth Edison Co.* (1985), 133 Ill.App.3d 472, 88 Ill.Dec. 449, 478 N.E.2d 1057. In order to be admitted into evidence, the expert testimony must assist the trier of fact in understanding the evidence or deciding a factual issue, and the witness must be qualified by knowledge, skill, experience, training, or education to give such testimony. *Ruffiner v. Material Service Corp.* (1985), 134 Ill.App.3d 747, 89 Ill. Dec. 414, 480 N.E.2d 1157."

495 N.E.2d at 802–3.

Our supreme court appeared to have adopted the *Summers* test in *Mihay v. State* (1987), Ind., 515 N.E.2d 498. Unfortunately, as pointed out by Judge Miller in *Estate of Hunt v. Board of Commissioners of Henry County* (1988), Ind.App., 526 N.E.2d 1230, our supreme court in *Brooke v. State* (1987), Ind., 516 N.E.2d 9, reverted

to the old rule. Again, in *Henson v. State* (1989), Ind., 535 N.E.2d 1189, the court reiterated the traditional rule. However, in *Wissman v. State* (1989), Ind., 540 N.E.2d 1209, 1213, our supreme court stated:

"Expert testimony is inappropriate and may be excluded when it concerns matters within the common knowledge and experience of ordinary persons and which the jury may determine as well as the expert. *Grimes v. State* (1983), Ind., 450 N.E.2d 512. However, even if evidence is not beyond the knowledge and expertise of the average juror, the expert may nevertheless testify concerning his special knowledge of the subject. *Summers v. State* (1986), Ind.App., 495 N.E.2d 799."

Therefore, I remain steadfast in my belief that the rule announced in *Summers* is the proper test for the admissibility of expert testimony. My opinion is buttressed further by the recognition of the holding in *Summers* in Justice Givan's opinion in Wissman.

The standards embodied in the modern rule as espoused in *Summers* were met here. Further, I quite agree that a qualified expert witness may give an opinion as to an ultimate fact in issue. *Breese v. State* (1983), Ind.App., 449 N.E.2d 1098.

CONOVER, Judge, dissenting.

I respectfully dissent. The trial judge erred by removing the doctrine of *res ipsa loquitur* from the case.

While the majority makes a distinction between fire cases and those involving other types of injury, I see no reason for such distinction. Further, if such distinction is proper, sufficient evidence under the Indiana rule was presented by Plaintiffs below to invoke the doctrine of *res ipsa loquitur*.

Initially, the trial judge concluded at the close of the Plaintiffs' case in chief *res ipsa loquitur* did not apply because "Arson has not been ruled out. I don't think it would be fair to charge someone with a duty to prevent arson." (R. 331) The only mention of arson came during the cross-examination of the local fire inspector, Jack Butterfield. He testified during cross-examination:

Q. With regard to other possible causes, have you ruled out arson[?]

A. I never rule out arson.

Q. Were there several fires with regard to businesses in a couple of year period [sic] in the mid–1980's.

A. We've had our share.

Q. In fact, did one person claim that he torched the Robertson Mill.

A. Yes, he did.

(R. 220) In Indiana, it is not necessary before the doctrine is invoked that the plaintiff exclude all other possible causes. Our supreme court clearly has said:

... It is appellant's position that since the evidence tended to establish that the accident could have resulted from more than one cause, i.e., negligence of appellant and/or a defective tire manufactured and sold by Firestone, the doctrine of *res ipsa loquitur* does not apply.

With appellant's contention we cannot agree. To assert the doctrine of *res ipsa loquitur* it is not necessary to prove that the *only* cause of the accident was defendant's negligence. To the contrary it is said:

'... the physical cause of the injury and the attendant circumstances indicate such an unusual occurrence that in the light of ordinary experience *it would probably not have happened if those who had the management or control of the causative instrument had exercised proper care*' [Supreme Court's emphasis] ...

21 I.L.E. Negligence, § 163, p. 401.

It is therefore not necessary for a plaintiff to exclude every other possibility other than the defendant's negligence as a cause. This principle has been recognized in Indiana.

'... A number of different causes or inferences may be thus left to the final determination of the triers of the facts'

...

*Merriman v. Kraft* (1969), 253 Ind. 58, 249 N.E.2d 485, 487.

Plaintiffs below presented substantial evidence the fire could have been the result of Robertson's negligence. Fire inspector Butterfield testified Robertson's factory was an old, highly flammable wood building whose contents were volatile with dust present that could have been explosive. (R. 197) Further, there was some evidence from which the jury could have inferred the fire was the result of the bearings and motors situated in the basement of the mill becoming overheated because there was testimony the fire started in the basement.

Butterfield testified he inspected two motors in the basement but the motors were burned so severely it could not be determined whether the motors were the cause. He further testified motors could experience electrical problems if the bearings became overheated. From this evidence, the jury could reasonably infer Robertson's negligence proximately caused the resulting fire albeit there was some evidence a third person "torched" the building.

I believe it clear Plaintiffs below met the requirements listed in *SCM Corp. v. Letterer* (1983), Ind.App., 448 N.E.2d 686, 689. Without question (1) the event was not of a kind which ordinarily does not occur in the absence of someone's negligence; (2) Robertson's building and premises were within its exclusive possession and control; and (3) the fire was not due to any voluntary action or contribution by the plaintiffs. That there was some evidence a third person "torched the premises" is merely conflicting evidence to be weighed along with *res ipsa loquitur's* presumption of negligence by the fact finder at the conclusion of the trial. *Merriman,* 249 N.E.2d at 487.

For those reasons, I believe the trial court erred. I vote to reverse.